## LANEY v. CHESTERFIELD COUNTY.

Under section 1087 of General Statutes (which declares a county liable for injuries received to person or property through a defect in the repair of a bridge), a county is liable for such injuries whether it was negligent or not; but it is not liable for injuries received through means of such defect where they were really caused by the party injured heedlessly disregarding this defect, when it was patent and he knew it to be dangerous.

Before HUDSON, J., Chesterfield, February, 1888.

This was an action to recover damages for injury received through the breaking of a bridge, which, according to the testimony, the drivers of the teams that fell through knew to be rotten and dangerous.   The judge charged the jury as follows:

You have submitted to you two actions, one by Cynthia Laney against the County of Chesterfield, and the other by Alexander

Robeson against the County of Chesterfield. Cynthia Laney seeks to recover from the county damages for the alleged defect in a bridge over Thomson's Creek, on a public highway of the county, alleging that by reason of such defect her property was damaged. Alexander Robeson seeks to recover damages for bodily injuries. These actions, gentlemen, are based on the authority contained in the act of the legislature, section 1087 of the General Statutes, which gives the right of action against the county for injuries of this kind. As you have been told in the course of the argument, no action would lie against the county in this court unless it was by sanction of the legislature. These actions, therefore, being founded on section 1087 of the General Statutes, it devolves on me, in the first place, to explain that law. (Reads section 1087.).

Now, it is contended and argued for the plaintiff that proof of the defect, proof of the injury, and proof that the load did not exceed the ordinary weight, will entitle plaintiff to recover without any other proof, and in spite of any other proof; that such a thing as contributory negligence on the part of the plaintiff in an action of this sort would have no weight. In other words, if injury grows out of the wilful neglect of the plaintiff, that it would make no difference; and, furthermore, that there could be no defence set up by the county by attempting to show proper care and diligence on the part of the county commissioners. Both these propositions must be taken with some qualifications. I do not think that this act was intended to give the plaintiff the right to recover against the county for injuries which he knowingly and wilfully brought upon himself. It would be contrary to all reason, contrary to all common sense of right, that a person should injure himself, or injure his property, and then ask the county to pay for it. So that, in an action of this kind, I hold that it is not enough that the injury should have occurred from a defect alone; but if it was contributed to by plaintiff's wilfulness, deliberate neglect, that that would be a defence which the county could set up, and which has been attempted to be set up in this case. That is my interpretation of the act. It is not intended that this act should be an unreasonable one; and if the interpretation given to it by

plaintiff's counsel is correct, it would be unreasonable, as I shall proceed to show you in the further progress of my charge.

I will first refer to the case of Alexander Robeson. In order to recover, evidence has been introduced designed to show, and in a great measure not contradicted, that he did fall through that bridge while driving that wagon. There seems to be no dispute about that—that he did receive bodily injuries. And then the evidence, furthermore, is that the bridge fell through by reason of its being in a defective condition—in want of repairs. Now, if that be the case, and the preponderance of the evidence satisfies you of the fact; if he did fall through it and receive bodily injuries, and it occurred from a defect of the bridge, why his case would, in the main, be made out, and the question then would be as to the amount of damages.   *   *   *

Now, the question arises as to that defect in the bridge. It is contended by plaintiff's counsel, that the defect existed, that it was known to the county commissioners, and that it was the cause of the injury. To that, defendant's counsel replies by saying that it existed, and that it was known to the county commissioners, but says that it was fully known to Mr. Robeson himself, so much so that a reasonable man would not have gone over the bridge with such a load, that the load was an overload, and he knew full well the dangerous condition of the bridge, and that the injury resulted not simply from the defect, but was brought on himself in that way; that he drove on a bridge that he knew to be in a dangerous condition, and knew that he had an overload. Now, I say defendants make that contention; but as to whether he had an overload or not, there is conflict of testimony, and the plaintiff's counsel contends that the load was an ordinary and reasonable one, and that the evidence sustained that fact. It is for you to say whether it was an overload or a reasonable average load. If it was an overload, known to Mr. Robeson, and he knew full well the dangerous condition of the bridge; knew it would not do to attempt to cross it with such a load; nevertheless did attempt to cross it; then I think that is a circumstance which you will take into consideration when you come to determine whether he shall recover or not. And if you conclude, from the weight of the evidence, that it was his own recklessness

that brought the thing on, and not the result of the defect alone, your verdict should be for the defendant.

On the other hand, if the load was an average load and not an overload, and if the defect in the bridge was known to Mr. Robeson, but he did not know the danger was imminent, and as a reasonable man he concluded that he could cross very well; that others were crossing it all the time, and that he could cross it; if he had reason so to think, if such would have been the conclusion of a man of ordinary intelligence and ordinary reason, and he makes the attempt to cross and falls in, then he is entitled to recover. I think you will understand the difference. According to the act, if it is an overload, the recovery cannot be had. If it was an overload, although the defect was there, the party driving over with an overload cannot recover. It is for you to determine whether there was an overload or not, and you, too, are to gather it from the preponderance of the evidence.

It is contended that one witness puts the load at 950 pounds. His testimony was that it was a very light load—550 feet; but he gives facts, to wit, 5 sticks 16 feet long, 12x12, which would make 960 feet instead of 550 feet. Whether that witness was confused you are to say. And then you heard the testimony of various other witnesses putting it at from 750 feet down to a less amount; and you are to say now how much, about how many feet there were, and about what weight there was. Taking four pounds to the foot, if that be correct in weight, and if Mr. Reid be correct in the number of sticks, it would make 960 feet and 3,840 lbs. Mr. Redfearn says 2,400 lbs. was an ordinary load, and that anything more than that was an unusual, not an ordinary, load. All that testimony is for you.

Now, if you, under this explanation, come to the conclusion that Mr. Robeson brought this on himself, then I instruct you that he cannot recover, although there was a defect; if it was such that he knew of, and such that he knew, or had the best reason to know, would bring about the injury, and then he took the risk. But if a man of ordinary intelligence would have taken the risk, if the ordinary calculation would have been that he could cross it, and he attempted to cross, and had no overload, then he is entitled to recover.

*   *   *   Now, the explanation I have given of the act in the case of Mr. Robeson applies to the case of Mrs. Laney, because the property of Mrs. Laney, the plaintiff, was, by authority, in hand and under the control of Mr. Robeson, and whatever appeared to the senses of Mr. Robeson, and by whatever he, as a man of ordinary intelligence, should be governed, applies to the plaintiff, Mrs. Laney, just as much as if she had been present on the wagon as the driver herself. Now, if under the law, as I have explained it, and under the evidence you conclude that Mrs. Cynthia Laney is entitled to recover, you will have to fix the amount. That amount will consist of injury to the team and harness.   *   *   *

I hope you will not be misled by anything I have said in regard to contributory negligence. Do not understand me as saying that people when they drive over bridges shall scrutinize them and make nice calculations as to chances of injury. That is not it. But I do tell you that if the defect is plain, and the party is one of ordinary intelligence, and knows that he cannot drive over it without going through; but nevertheless does drive over and does receive injury thereby, of course he cannot recover against the county. But if the defect is such that a man of ordinary intelligence would take the risk, there being nothing to deter him—a man of ordinary intelligence—from taking the risk, and he does take the risk, and the defect brings injury upon him, the county is liable. To prevent the plaintiffs from recovering in these cases, the preponderance of evidence must be that there was an overload, or that the defect was such that this man was obliged to know that he would go down, or would, by the exercise of ordinary intelligence, have seen it.

Now, I will illustrate that. Suppose that the defect to consist in the washing away by a freshet of a span, or part of a span, and the driver comes up with a loaded wagon, and although part of the span is gone, he is headstrong enough to drive his mules to destruction and himself to the risk of ruin, why, you would say at once that the man could not recover, because the defect is such that he could not drive over. That is what I mean by this thing of contributory negligence, that is an illustration of a man's bringing injury on himself.   *   *   *

The jury found a verdict for defendant, and plaintiff appealed.

*Messrs. Prince, Rankin & Stevenson,* for appellant.

*Messrs. Hough & Kennedy,* contra.

July 13, 1888. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. The appellant sought, below, to recover damages for injury to her property, certain mules and a wagon, alleged to have been caused by the falling in of a bridge on a public highway. The driver of this team and wagon, who was injured at the same time, also brought action, and it was understood that this appeal should embrace the two. The verdict was for the defendant, and the appeal is based upon a single exception, to wit: "Because his honor charged the jury that the question of contributory negligence could be considered as affecting the case."

It will be seen by looking into the case, that the actions were brought under section 1087, General Statutes, which provides: "That any person who shall receive bodily injury or damage in his person or property through a defect in the repair of a highway, causeway, or bridge, may recover, in an action against the county, the amount of damages fixed by the finding of a jury. If such defect in any road, causeway, or bridge existed before such injury or damage occurred, such damage shall not be recovered by the person so injured, if his load exceeded the ordinary weight."

The substance of his honor's entire charge was condensed at the close in the following concise sentence, to wit: "To prevent the plaintiffs from recovering in these cases, the preponderance of evidence must be that there was an overload, or that the defect was such that this man was obliged to know that he would go down, or would by the exercise of ordinary intelligence have seen it," which he illustrated in the following language: "Suppose the defect to consist in the washing away by a freshet of a span, or part of a span, and the driver comes up with a loaded wagon, and although part of the span is gone, he is headstrong enough to drive his mules to destruction, and himself to the risk of ruin,

why, you would say at once that the man could not recover, because the defect is such that he could not drive over. That is what I mean by this thing of contributory negligence; that is an illustration of a man bringing injury on himself."

It is true that section 1087, General Statutes, says nothing about contributory negligence, and it holds the county responsible for all injuries sustained through a defect, "in the repairs of the highway, &c., &c.," without qualification or conditions; but it does not seem to us that his honor's charge was at all in conflict with this construction of the act, because in a case like that put by his honor, explanatory of the law laid down, the injury sustained could not be said to have been caused by a defect in the repairs of the highway or bridge. On the contrary, the cause would be the inexcusable heedlessness of the party injured. His honor held the county responsible in every case except where the injured party apparently availed himself of a patent defect to bring injury to the property exposed, or at least the jury was not warranted in coming to any other conclusion than that such was his honor's idea of the law in such cases. As his honor said : "It was certainly not intended that this act should be an unreasonable one, and if the interpretation given to it by plaintiff is correct, it would be unreasonable."

In the case of *Thompson* v. *Railroad Company* (24 S. C., 369), this court did say that in section 1511 of General Statutes, a somewhat similar act to section 1087, "Nothing was said about negligence, the purpose of the act being to dispense with any inquiry into that subject." Section 1511 was an act intended to make railroad companies liable for damage done by fire communicated by the engine, or originating within the limits of the right of way of the company, and the act was imperative and distinct that in such cases the company should be responsible, and the court, in discussing this act, used the above language, holding that, so far as the *defendant* was concerned, the question of negligence was not involved (see also *Crouch* v. *Railway Company*, 21 S. C., 495), that the company was liable, whether negligent or not, and also whether the fire was the remote or proximate cause of the injury, the liability attaching upon the fact that the fire was communicated by the engine, or that it originat-

ed within the right of way of said company. So, too, under section 1087, the county could not shield itself by interposing due care, proper attention, and the absence of negligence, because this section, like section 1511, dispenses with and eliminates all such inquiries, and bases the right of action granted therein upon injuries occasioned by the defect in the highway.

But this does not prevent the county from showing that the defect, although in existence, was yet not the cause of the injury, but that, on the contrary, the plaintiff himself made use of that defect by his own heedlessness and recklessness in producing the injury. His honor's charge, especially in the clear and pointed illustration by which it was explained, did not raise so much the question of contributory negligence, but rather the question, what caused the injury? was it the defect or the plaintiff's own act? True, it should require a strong case to relieve the county, when the injury occurred at the locality of a defect, and in attempting to pass over it, and so the charge of his honor explained to the jury here, which then became a question of fact for them.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.